**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| IDB VENTURES, LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:17-CV-660-WCB-RSP |
| | § | LEAD CASE |
| | § | |
| CHARLOTTE RUSSE HOLDINGS, INC., | § | |
| | § | |
| *Defendant*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is <u>Defendant Academy, Ltd.'s Motion to Dismiss for Failure to State a Claim</u>, Case No. 2:17-cv-523, Dkt. No. 58, and <u>Defendant The Buckle, Inc.'s Motion to Dismiss for Failure to State a Claim</u>, Case No. 2:17-cv-659, Dkt. No. 7. On October 17, 2018, the Court held a hearing on various motions in this case, including the two motions to dismiss. After considering the arguments made in the parties' briefs and during the hearing, the Court DENIES the motions.

## BACKGROUND

Plaintiff IDB Ventures, LLC, owns U.S. Patent No. 6,216,139 ("the '139 patent"), which is entitled "Integrated Dialog Box for Rapidly Altering Presentation of Parametric Text Data Objects on a Computer Display." IDB has asserted claims 1, 2, and 19 of the '139 patent against defendants Academy, Ltd. ("Academy"), Case No. 2:17-cv-523, Dkt. No. 50, at ¶ 10, and The Buckle, Inc. ("Buckle"), Case No. 2:17-cv-659, Dkt. No. 1, at ¶ 9. Claims 1 and 19 are independent claims. Claim 2 depends from claim 1.

Claim 1 provides as follows:

> 1.  A method for using a computer system to sort and display text data objects, comprising the steps of:
> a.  imaging, on a display device controlled by the computer system, a query dialog box,
> wherein the query dialog box displays each of a plurality of parameters associated with each of the text data objects, forms a plurality of spaces for listing values associated with each displayed parameter, and further forms a space for selecting a sort order;
> b.  designating, for each displayed parameter, a parameter value;
> c.  constructing a sort order from the displayed parameters in the space for selecting a sort order;
> d.  selecting, using the computer system, text data objects satisfying the designated values; and
> e.  sorting, using the computer system, the selected text data objects according to the constructed sort order.

Claim 2 adds the step of "imaging on the display device controlled by the computer a list of the sorted text data objects."

Claim 19 is similar to claim 1 but is set forth in means-plus-function form, *see* 35 U.S.C. § 112(f).  Except for being directed to an apparatus rather than a method, the preamble and the means-plus-function limitations of claim 19 correspond closely to the five steps of claim 1. Claim 19 provides as follows:

> 19.  A computer memory storage device encoded with a computer program for using a computer system to sort and display text data objects, comprising:
> a.  means for imaging, on a display device controlled by the computer system, a query dialog box,
> wherein the query dialog box displays each of a plurality of parameters associated with each of the text data objects, forms a plurality of spaces for listing values associated with each displayed parameter, and further forms a space for selecting a sort order;
> b.  means for designating, for each displayed parameter, a parameter value;
> c.  means for constructing a sort order from the displayed parameters in the space for selecting a sort order;
> d.  means for selecting, using the computer system, text data objects satisfying the designated values; and

e. means for sorting, using the computer system, the selected text data objects according to the constructed sort order.

The defendants have filed motions under Fed. R. Civ. P. 12(b)(6) to dismiss IDB's complaints for failure to allege infringement of a patentable claim.[1] The defendants first contend that the claims of the '139 patent are directed to patent-ineligible subject matter "relating to the abstract concept of obtaining user parameters for selection and sorting data, then selecting and sorting data using those parameters." Case No. 2:17-cv-523, Dkt. No. 58, at 1.[2] In addition, the defendants contend that IDB's complaints fail to state a claim that the defendants' websites infringe the '139 patent and that IDB's failure to plead joint infringement is fatal to its infringement claims. *Id.* at 2.

## DISCUSSION

### A. The motion to dismiss for failure to claim patent-eligible subject matter

The defendants contend that the claims of the '139 patent "relate to the purely abstract idea of obtaining user parameters for selecting and sorting data, then selecting and sorting data using those parameters." Case No. 2:17-cv-523, Dkt. No. 58, at 1. The Court disagrees.

Section 101 of the Patent Act, 35 U.S.C. § 101, states that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent." However, "[b]ecause patent protection does not extend to claims that monopolize the 'building blocks of human ingenuity,'

---

[1] Defendant Academy's motion, Case No. 2:17-cv-523, Dkt. No. 58, and defendant Buckle's motion, Case No. 2:17-cv-659, Dkt. No. 7, are quite similar. While there are minor differences between the two motions, the defendants' arguments addressed in sections A and B.1 of this order are substantively identical. In those sections of this order, the Court will therefore refer to Academy's motion as representative of both defendants' arguments.

[2] Although the defendants challenge the patent eligibility of all the claims of the '139 patent, IDB has asserted only claims 1, 2, and 19. Therefore, only those claims are properly before the Court with respect to the issue of patent eligibility.

claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (citing *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014)). In order to determine whether the claims of the '139 patent are patent-eligible under section 101, the court "must first determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Alice Corp.*, 134 S. Ct. at 2355. If the court finds that the claims are directed to an abstract idea, the court must then examine the elements of the claims to determine whether they contain "an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Id.* at 2357 (internal quotations and citation omitted). If, instead, the court determines that "the claims are directed to a patent-eligible concept, the claims satisfy § 101 and [the court] need not proceed to the second step." *Core Wireless*, 880 F.3d at 1361.

"The abstract ideas category embodies the long-standing rule that an idea of itself is not patentable." *Data Engine Techs. LLC v. Google LLC*, No. 2017-1135, 2018 WL 4868029, at *5 (Fed. Cir. Oct. 9, 2018) (internal quotations and citations omitted). In the context of computer-related technology, the Federal Circuit has generally found inventions not to be abstract if they are directed to specific improvements to computer functionality. *See Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("[W]e find it relevant to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea"); *see also Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1260 (Fed. Cir. 2017) ("The claims in [*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Assn.*, 776 F.3d 1343 (Fed. Cir. 2014)] and [*In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016)] were not directed to an improvement in computer functionality, which separates the claims in those cases from the claims in the current case"); *Intellectual Ventures I LLC v. Erie*

*Indem. Co.*, 850 F.3d 1315, 1328 (Fed. Cir. 2017) ("[T]he claims are not focused on *how* usage of the XML tags alters the database in a way that leads to an improvement in the technology of computer databases"). The Federal Circuit has characterized the principle underlying that distinction as embodying a requirement that a patent be directed to "specific technologic modifications to solve a problem or improve the functioning of a known system." *Trading Techs. Int'l, Inc. v. CQG, INC.*, 675 F. App'x 1001, 1004–05 (Fed. Cir. 2017).

In a series of cases, the Federal Circuit has applied that principle in finding specific user interfaces in computer-related inventions to be patent-eligible and not abstract. In *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018), for example, the claims at issue were related to "improved display interfaces, particularly for electronic devices with small screens." *Id.* at 1359. The court held that, as in the case of claims directed to an improvement in computer functionality, the asserted claims were directed to "an improved user interface for computing devices." *Id.* at 1362. As opposed to prior art interfaces that "required users to drill down through many layers to get to desired data or functionality," the court found that the invention "improve[d] the efficiency of using the electronic device by bringing together 'a limited list of common functions and commonly accessed stored data.'" *Id.* at 1363.

The *Core Wireless* court emphasized that the claims at issue in that case were directed to "a particular manner of summarizing and presenting information in electronic devices." *Id.* at 1362. The claimed manner of summarizing and presenting information included limitations on the data listed in the application summary window, restraints on the type of data that can be displayed in the summary window, and the particular state in which device applications must exist. *Id.* at 1362–63. Based on that analysis, the court found the claims patent-eligible. The court explained that "[l]ike the improved system[] claimed in *Enfish* . . . these claims recite a

5

specific improvement over prior systems, resulting in an improved user interface for electronic devices." *Id.* at 1363.

Similarly, in *Data Engine Techs. LLC v. Google LLC*, No. 2017-1135, 2018 WL 4868029 (Fed. Cir. Oct. 9, 2018), most of the claims before the court were directed to a specific method enabling a user to navigate through three-dimensional electronic spreadsheets. The court held that those claims were not directed to an abstract idea. Compared to the prior art, which undercut the effectiveness of the computer, those claims in the *Data Engine* case were directed to an interface that took the form of notebook tabs, which allowed users easy and intuitive access to the electronic spreadsheet material. As the *Data Engine* court explained, the improvement "allowed computers, for the first time, to provide rapid access to and processing of information in different spreadsheets." *Data Engine*, 2018 WL 4868029, at *6.

The court in *Data Engine* noted that representative claim 12 of one of the patents in suit was "directed to more than a generic or abstract idea[,] as it claim[ed] a particular manner of navigating three-dimensional spreadsheets, implementing an improvement in electronic spreadsheet functionality." *Id.* at *8. The court distinguished that claim from claim 1 of another one of the patents in suit, which the court found to be directed to an abstract idea. The latter claim, the court found, recited a more generic implementation of a user interface. *See id.* at *9 ("[I]t generically recites 'associating each of the cell matrices with a user-settable page identifier' and does not recite the specific implementation of a notebook tab interface") (citation omitted). Thus, the court found claim 1 "not limited to the specific technical solution and improvement in electronic spreadsheet functionality that rendered representative claim 12 . . . patent eligible." *Id.*

In *Trading Technologies International, Inc. v. CQG, Inc.*, 675 F. App'x 1001 (Fed. Cir. 2017), the Federal Circuit addressed a patent that was designed to reduce the time it takes for a securities or commodities trader to place a trade when electronically trading on an exchange. To achieve that objective, the patent claimed a graphical user interface that included a dynamic display for a plurality of bids and asks, as well as a static display of prices corresponding to the bids and asks. The resulting interface displayed the bid and asked prices "dynamically along the static display," so that the display would "pair[] orders with the static display of prices and prevent[] order entry at a changed price." *Id.* at 1003. The court found the claims patent-eligible because they provided a "specific . . . solution of a problem, or improvement in the functioning of technology." *Id.* at 1005.

Similarly, in *DDR Holdings, Inc. v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), the Federal Circuit encountered a patent directed to a computer system that made web pages look alike in the display presented to the user, so that the user seeking to navigate from a host website to a third-party website could instead be directed to a hybrid web page that contained product information from the third-party website, but the visual "look and feel" from the host website. The court held that the invention was patent-eligible, as it constituted an inventive solution for a "particular Internet-centric problem." *Id.* at 1259. The invention in *DDR Holdings* thus provided a specific solution to a problem inherent in Internet marketing, i.e., generating a user interface that achieved a technical objective with respect to user experience on a website.

By contrast, in *Intellectual Ventures I LLC v. Erie Indemnity Co.*, the patent was directed to "methods and apparatuses that use an index to locate desired information in a computer database." 850 F.3d at 1325. The court held that the invention was drawn to the abstract idea of "creating an index and using that index to search for and retrieve data." *Id.* at 1327 (internal

quotations and citation omitted). The court explained that "organizing and accessing records through the creation of an index-searchable database [] includes longstanding conduct that existed well before the advent of computers and the Internet." *Id.* Importantly, as the *Data Engine* court explained, the claims in *Intellectual Ventures I* "did not recite any specific structure or improvement of computer functionality sufficient to render the claims not abstract." *Data Engine*, No. 2017-1135, 2018 WL 4868029, at *7.

Like the claims in *Intellectual Ventures I*, the claims at issue in *Evolutionary Intelligence LLC v. Sprint Nextel Corp.*, 677 F. App'x 679 (Fed. Cir. 2017), were merely "directed to selecting and sorting information by user interest or subject matter." *Id.* at 680. The Federal Circuit in that case noted that "[w]hether analyzed individually or as an ordered combination, the claims recite . . . conventional elements [of information containers, registers, and gateways] at too high a level of generality to constitute an inventive concept." *Id.*

The '139 patent "relates generally to the field of information processing and display by computers and, more particularly, to a computer-implemented method for sorting and displaying text data objects that permits rapid re-sorting and re-formatting of displayed text data objects." '139 patent, col. 1, ll. 8-12. The defendants argue that the object of the invention "is to target the generic concept of obtaining user parameters for selecting and sorting data, then selecting and sorting data using those parameters." Case No. 2:17-cv-523, Dkt. No. 58, at 6–7. IDB responds that the defendants' characterization of the '139 patent "leaves out the crux of the invention— that is the claims are direct[ed] to [a] specific implementation of a query dialog box." Case No. 2:17-cv-660, Dkt. No. 44, at 9. The Court agrees with IDB.

The defendants ignore the specific improvement over prior systems, consisting of the use of the query dialog box to facilitate the presentation, sorting, and selection of text data objects.

*See* '139 patent, col. 13, ll. 43-47 ("the query dialog box displays each of a plurality of parameters associated with each of the text data objects, forms a plurality of spaces for listing values associated with each displayed parameter, and further forms a space for selecting a sort order"). Rather than merely reciting a general method for selecting and sorting data (as in the case of the generic claims in *Intellectual Ventures I* and *Evolutionary Intelligence*), claims 1 and 19 of the '139 patent recite selecting and sorting data using a specific structure (i.e., a query dialog box), which is designed in a particular manner to permit the construction of filters and sort orders on the same screen. *See* Case No. 2:17-cv-660, Dkt. No. 72-7 (Appeal Br. to PTO) at 10 ("Unique data-modeling functionality . . . that arises when a user constructs filters and sort orders on the same screen, and then is able to immediately review the filtered and sorted data"). Much like the improved particular computer interface in *Core Wireless* and the improved particular electronic spreadsheet functionality in *Data Engine*, the assignment of particular functions to the query dialog box is specific enough to overcome the defendants' contentions that the asserted claims are so generic that they must be deemed to be directed to an abstract idea.

Because the defendants have failed to persuade the Court by the showing made in their motion to dismiss that the asserted claims are directed to an abstract idea, the Court need not proceed at this point to the second step of the *Alice* inquiry. *See Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018). While further proceedings in this case may shed additional light on this issue, for present purposes the Court concludes that the defendants have not shown that the asserted claims are directed to patent-ineligible subject matter. Accordingly, the Court DENIES the defendants' motions to dismiss the complaints based on patent ineligibility under 35 U.S.C. § 101.

### B. The motion to dismiss for failure to state a claim for direct infringement

#### 1. Whether the defendants' websites infringe the '139 patent turns on claim construction

The defendants argue that the asserted claims of the '139 patent require that the "displayed parameters" from which the patented invention constructs the "sort order" in "the space for selecting a sort order" in limitation (c) must be the same as the "plurality of parameters associated with each of the text data objects" in limitation (a) for each of which a parameter value is designated in limitation (b). Case No. 2:17-cv-523, Dkt. No. 58, at 25–27. Because the defendants assert that on their websites the sort order is constructed using parameters that differ from the search parameters that are displayed in the query dialog box and are associated with each of the text data objects, the defendants contend that the asserted claims, on their face, do not read on defendants' systems.

The Court previously addressed and rejected a similar motion by defendant DSW. Case No. 2:17-cv-660, Dkt. No. 51. For the same reasons as set forth in that order, the Court rejects the defendants' arguments on this issue. As explained in the DSW case, the defendants' argument depends on a claim construction issue that is not as clear-cut as the defendants suggest and cannot be resolved based on the limited showing made in the motions to dismiss. *See id.*

#### 2. Whether IDB must plead a joint infringement theory turns on claim construction

The defendants argue that IDB's complaints should be dismissed because the complaints do not adequately plead a claim of joint infringement. Case No. 2:17-cv-659, Dkt. No. 7, at 26–27; Case No. 2:17-cv-523, Dkt. No. 58, at 27–29. IDB responds that it is not asserting a theory of joint infringement, and that it does not need to rely on a theory of joint infringement in order to prevail in this case. Case No. 2:17-cv-660, Dkt. No. 44, at 16.

The defendants' argument that the asserted claims can be infringed only under a joint infringement theory depends on a claim construction issue: whether "the 'designating' and 'constructing' steps (steps b and c) of claims 1 and 19 are performed by the end user of the computer system." Case No. 2:17-cv-659, Dkt. No. 7, at 26; Case No. 2:17-cv-523, Dkt. No. 58, at 27–28. According to the defendants, because certain steps are performed by the end user and others by the computer system, the plaintiff was required to plead joint infringement, and because the plaintiff did not do so, the plaintiff's infringement claims must be dismissed. In addition, Academy argues that "IDB itself admits in the First Amended Complaint that this dichotomy of agency exists." Case No. 2:17-cv-523, Dkt. No. 58, at 28 (citing Case No. 2:17-cv-523, Dkt. No. 50, at ¶ 9 ("When the user selects values for each parameter in the spaces provided and constructs a sort order, the computer system then selects the text data objects")).[3] IDB disputes the defendants' claim construction. Specifically, IDB contends that there is no requirement that a user perform any step of any of the asserted claims. Case No. 2:17-cv-660, Dkt. No. 44, at 16 ("It is IDB's position that the claims are *only* directed [to] steps performed by a computer") (emphasis added).

This is clearly a claim construction issue. If the claims are construed to mean that an end user is not required to perform certain steps (i.e., that all steps are performed by the computer system), IDB would not be required to plead joint infringement. Alternatively, if the claims are construed to require the end user to perform certain steps, IDB's infringement pleadings—in light of its disclaimer of intent to proceed on a joint infringement theory—would be deficient.

---

[3] IDB's complaint against Buckle does not include this language. *See* Case No. 2:17-cv-659, Dkt. No. 1, at 2. Although IDB has filed a motion to file an amended complaint against Buckle, Case No. 2:17-cv-660, Dkt. No. 90, that motion is opposed and has not yet been acted on by the Court.

As to the defendants' reference to the role of the user in IDB's First Amended Complaint, the Court does not interpret that language as conceding that the user must perform certain steps in order for Academy to infringe the asserted claims. Instead, paragraph 9 of IDB's First Amended Complaint against Academy merely summarizes a preferred embodiment of the invention, in which a user is prompted to construct a sort order and select values for each parameter. Importantly, IDB's theory of infringement, discussed in paragraphs 13, 14, and 15 of IDB's First Amended Complaint, states that the Accused Instrumentality (i.e., Academy's website found at www.academy.com) performs each claim step. Case No. 2:17-cv-523, Dkt. No. 50, at ¶13–15. Accordingly, IDB does not concede a "dichotomy of agency" in paragraph 9 of its First Amended Complaint against Academy.

The defendants' motions to dismiss because IDB failed to state a claim for direct infringement are therefore DENIED.

IT IS SO ORDERED.

SIGNED this 31st day of October, 2018.


_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE