**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| IDB VENTURES, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:17-CV-660-WCB-RSP |
| | § | LEAD CASE |
| CHARLOTTE RUSSE HOLDINGS, INC., | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are several motions relating to requests by plaintiff IDB Ventures, LLC, ("IDB") to amend its complaint and infringement contentions in its action against defendant Academy, Ltd. ("Academy"). The various motions are <u>Plaintiff's Opposed Motion for Leave to Amend Complaint Against Academy, Ltd.</u>, Dkt. No. 92, in which IDB sought leave to file its Second Amended Complaint against Academy; <u>IDB Ventures, LLC's Opposed Motion to Withdraw its Motion for Leave to Amend Complaint</u>, Dkt. No. 113, in which IDB seeks to withdraw its motion for leave to file its Second Amended Complaint against Academy; <u>Plaintiff's Opposed Motion for Leave to Amend Complaint Against Academy, Ltd.</u>, Dkt. No. 110, in which IDB seeks leave to file its Third Amended Complaint against Academy; <u>Plaintiff's Opposed Motion for Leave to Amend its Infringement Contentions</u>, Dkt. No. 119, in which IDB seeks to amend its infringement contentions in accordance with the allegations in its Third Amended Complaint; and <u>Defendant Academy, Ltd.'s Cross Motion to Strike Plaintiff's</u>

1

<u>Amended Infringement Contentions</u>, Dkt. No. 129, in which Academy asks the Court to strike IDB's newly served amended infringement contentions.[1]

After consideration of the parties' briefs and the pertinent record materials, the Court disposes of the motions as follows: (1) the Court DISMISSES AS MOOT the motion in Dkt. No. 92; (2) the Court GRANTS the motion in Dkt. No. 113; (3) the Court GRANTS IN PART and DENIES IN PART the motion in Dkt. No. 110; (4) the Court GRANTS IN PART and DENIES IN PART the motion in Dkt. No. 119; and (5) the Court GRANTS IN PART and DENIES IN PART the motion in Dkt. No. 129. The essence of the Court's rulings is that IDB will be permitted to amend its complaint and infringement contentions to allege joint infringement, but will not be permitted to amend its complaint and infringement contentions to allege willful infringement or induced infringement.

## I. BACKGROUND

The initial complaint against Academy was filed on July 6, 2017. Case No. 2:17-cv-524, Dkt. No. 1. The complaint alleged that Academy, directly or through intermediaries, had engaged in direct infringement of IDB's U.S. Patent No. 6,216,139 ("the '139 patent"), under 35 U.S.C. § 271(a). Case No. 2:17-cv-524, Dkt. No. 1, at 2–3. Academy filed a motion to dismiss

---

[1] All references to docket entries are to entries in Case No. 2:17-cv-660, unless otherwise indicated. The action against Academy was originally filed as Case No. 2:17-cv-524. The Academy case was subsequently consolidated with the cases that IDB brought against DSW Inc. and Burlington Stores, Inc., under Case No. 2:17-cv-523. *See* Case No. 2:17-cv-524, Dkt. No. 16. Those consolidated cases were subsequently further consolidated with the cases that IDB brought against Charlotte Russe Holdings, Inc., American Eagle Outfitters Inc., and The Buckle, Inc., under Case No. 2:17-cv-660, with Charlotte Russe Holdings, Inc., designated as the lead case. *See* Case No. 2:17-cv-523, Dkt. No. 67. The cases against Charlotte Russe Holdings, Inc., American Eagle Outfitters Inc., and DSW Inc. have been dismissed following settlement. *See* Case No. 2:17-cv-523, Dkt. No. 72 (DSW Inc.); Case No. 2:17-cv-660, Dkt. No. 38 (Charlotte Russe Holdings, Inc.); *id.*, Dkt. No. 58 (American Eagle Outfitters, Inc.). The case against Burlington Stores, Inc., has been transferred to the District of New Jersey. Case No. 2:17-cv-523, Dkt. No. 31. And the case against The Buckle, Inc., has been stayed pending settlement. Case No. 2:17-cv-660, Dkt. Nos. 104, 123, and 132.

the complaint on October 10, 2017, arguing that the '139 patent was ineligible for patenting under 35 U.S.C. § 101 and that the complaint failed to state a claim for direct infringement. *Id.*, Dkt. No. 11. As to the latter issue, Academy argued that IDB's complaint had failed to identify how Academy's website infringes the '139 patent because "IDB has not and cannot show that Academy infringes at least the query dialog box limitations of all of the claims of the '139 Patent," *id.* at 24, and because IDB "has failed to adequately plead a claim of joint infringement," *id.* at 25. As to the latter contention, IDB argued that the patent made clear that the "designating" and "constructing" steps of the method recited in claims 1 and 19 of the '139 patent must be performed by the end user of the computer system, while the remaining "displaying," "selecting," and "sorting" steps are performed by the computer system. Because of the divided nature of the alleged infringement, Academy argued that IDB's failure to plead joint infringement was fatal to its infringement claims. *Id.* at 26.

On November 7, 2017, IDB responded to Academy's motion to dismiss. Case No. 2:17-cv-523, Dkt. No. 13. IDB replied to the portion of Academy's motion dealing with patent ineligibility under section 101, but did not respond to the portion of the motion dealing with joint infringement. On November 14, 2017, Academy replied, again raising the arguments that the complaint failed to show that Academy's website satisfies the "query dialog box" limitation in every asserted claim, and that the complaint failed to adequately plead a claim of joint infringement. *Id.*, Dkt. No. 15, at 9–10.

On February 19, 2018, Judge Payne entered a docket control order for several of the defendants in related cases, not including Academy. Dkt. No. 33. That docket control order set July 26, 2018, as the deadline for filing amended pleadings. The Academy case was subsequently consolidated under Case No. 2:17-cv-660 with the other cases brought by IDB. *See*

Dkt. No. 40. The July 26, 2018, deadline for filing amended pleadings was extended to Academy shortly thereafter. (The docket control order currently in effect is the Second Amended Docket Control Order, which was entered on September 25, 2018. *See* Dkt. No. 81.)

On April 4, 2018, IDB filed its First Amended Complaint against Academy, Case No. 2:17-cv-523, Dkt. No. 50. That complaint added a paragraph stating that the dialog box in the claimed invention displays a list of parameters and prompts the user to construct a sort order from that list of parameters. When the user selects values for each parameter and constructs a sort order, the complaint explained, "the computer system then selects the text data objects satisfying the values assigned to the displayed parameters, sorts the selected text data objects according to the constructed sort order, and displays the sorted text data objects." *Id.* at 2. Academy promptly refiled its motion to dismiss the complaint. *Id.*, Dkt. No. 58.

IDB then changed attorneys, and its new attorneys filed a response to the motion to dismiss the First Amended Complaint. Dkt. No. 44. Academy replied, once again arguing that the First Amended Complaint failed to show how the Academy website satisfied the "query dialog box" limitation and failed to adequately plead joint infringement. Dkt. No. 47, at 9–10. In its surreply, IDB argued that Academy's motion to dismiss was dependent on claim construction issues that were in dispute. In particular, IDB argued that Academy's argument "appears to be premised on reading into the claims . . . a requirement that *a user* to perform [sic] certain functionality (hence requiring joint infringement)." Dkt. No. 48, at 5.

Shortly thereafter, the parties submitted a joint claim construction chart that revealed the claim construction issues on which the parties disagreed. Dkt. No. 52. In particular, the parties disagreed about the proper construction of the term "query dialog box" and the terms "designating, for each displayed parameter, a parameter value," and "constructing a sort order

from the displayed parameters in the space for selecting a sort order."  IDB's proposed construction of those three terms did not explicitly require action by the user, while Academy's proposed construction did.  In addition, the parties disagreed about several of the limitations in the means-plus-function claim, claim 19, including the "means for designating, for each displayed parameter, a parameter value" limitation and the "means for constructing a sort order from the displayed parameters in the space for selecting a sort order" limitation.  Once again, IDB's proposed construction of those two limitations did not explicitly require action by the user, while Academy's proposed construction did.

Claim construction briefs were filed by IDB on August 30, 2018, Dkt. No. 71, and September 20, 2018, Dkt. No. 76, and by Academy on September 13, 2018, Dkt. No. 72.  With regard to the "designating, for each displayed parameter, a parameter value" limitation, IDB continued to argue that the patent does not require a user to assign values to parameters.  Dkt. No. 71, at 10–11.  And with regard to the "constructing a sort order from the displayed parameters in the space for selecting a sort order" limitation, IDB again argued that the step does not require a user to input a sort order.  *Id.* at 16–17.

The Court held a claim construction and motions hearing on October 17, 2018.  *See* Dkt. No. 107.  On October 31, 2018, the Court entered an order construing each of the disputed claim terms.  Dkt. No. 97.

In the course of the claim construction and motions hearing, the Court asked counsel for IDB what the implications for the case would be if the Court concluded that the asserted claims require activity not only by the computer system, but also by the user, so that IDB would have to show joint infringement in order to prove its infringement case.  Dkt. No. 107, at 31.  Counsel for IDB stated that if the Court construed the claims to require action on the part of the user, IDB

should be allowed leave to replead. The Court then asked counsel for Academy for Academy's position on the issue of amending the complaint. Academy's counsel replied that "[i]f joint infringement is required [] we have no problem with them repleading joint infringement. The problem is that the patent is expired, and there shouldn't be an issue with past damages for joint infringement." Dkt. No. 107, at 32.

In the claim construction order, the Court construed several of the disputed claim terms. With respect to the steps recited in claims 1 and 2, the Court construed the phrase "designating, for each displayed parameter, a parameter value" to mean "a user assigning a value, or accepting a default value, for each displayed parameter." Dkt. No. 97, at 10. And the Court similarly construed the phrase "constructing a sort order from the displayed parameters in the space for selecting a sort order" to mean "a user specifying a sort order from one or more of the parameters displayed in the space for selecting a sort order, or using the sort order initially displayed." Dkt. No. 97, at 11. Those constructions were generally similar to the constructions proposed by Academy and quite different from the constructions proposed by IDB.

The Court construed the claim term "query dialog box" in a manner that departed from both parties' proposed constructions. IDB argued that query dialog box should be construed to mean "one or more areas displayed on a monitor that can be used to enter or select parameters associated with text data objects and to specify a sort order." Academy proposed a more restrictive definition of query dialog box as "a screen or window that allows for user input related to the text data objects and is separate from the screen or window for displaying the text data objects." The Court construed the term to mean "a defined area displayed on a monitor that allows for user input related to the text data objects and is distinct from the area for displaying the text data objects."

Finally, the Court construed three of the means-plus-function limitations of claim 19. As to the first of those limitations, the "means for imaging" limitation, the Court construed the recited function as "imaging a query dialog box" and the recited structure as "a display device, such as a monitor, cathode ray tube, or liquid crystal display, controlled by the computer system, or structural equivalents thereof." The Court's construction of that limitation was similar to the construction proposed by IDB and was broader than that proposed by Academy.

The Court construed the second of the means-plus-function limitations, the "means for designating" limitation, to have the function of "a user assigning a value, or accepting a default value, for each displayed parameter," as proposed by Academy; the Court's construction was more restrictive than IDB's proposal ("assigning a value for each displayed parameter"). The Court construed the structure of that limitation as being "a cursor control device or an alphanumeric input device, and structural equivalents thereof." As such, the Court's construction was narrower than IDB's proposed construction ("the computer system and equivalents thereof") and somewhat different from Academy's proposed construction.

The Court construed the "means for constructing a sort order" limitation in the same manner as proposed by Academy ("a user specifying a sort order from one or more of the parameters displayed in the space for selecting a sort order"), except that the Court added the words "or using the sort order initially displayed." That construction differed from IDB's proposed construction, which contained no reference to a user (IDB had proposed "specifying a sort order from one or more of the parameters displayed in the space for selecting a sort order"). As to the structure of that means-plus-function limitation, the Court used the same formulation as in the "means for designating" limitation ("a cursor control device or an alphanumeric input

device, and structural equivalents thereof"), which was narrower than IDB's proposed construction ("the computer system and equivalents thereof").

Contemporaneously with the filing of the claim construction order, the Court entered an order denying Academy's motion to dismiss the First Amended Complaint. Dkt. No. 96. The Court denied the motion to dismiss the complaint for patent ineligibility on the ground that the defendants had not shown in their motion to dismiss that the asserted claims were directed to patent-ineligible subject matter. The Court denied the motion to dismiss for failure to state a claim of direct patent infringement on the ground that the complaint could not be dismissed at the pleading stage because the viability of IDB's infringement claims turned on issues of claim construction.

Two days before the Court issued its orders on claim construction and the motions to dismiss, IDB filed a motion for leave to file a second amended complaint, which added allegations of willful infringement against Academy. Dkt. No. 92, 93. Academy opposed IDB's motion to file the second amended complaint, Dkt. No. 108, which provoked a reply from IDB, Dkt. No. 114.

Two weeks after the Court issued its claim construction order, IDB filed a motion for leave to file its Third Amended Complaint. Dkt. Nos. 110 and 111. IDB explained that it was necessary to file the Third Amended Complaint in light of the Court's claim construction order. The Third Amended Complaint added allegations of joint infringement and induced infringement by Academy in conjunction with users of its website and others. Dkt. No. 111, at ¶¶ 14, 19–20, 32–34. The Third Amended Complaint also reasserted IDB's willful infringement allegations (first introduced in the second amended complaint), stating that Academy "willfully and deliberately infringed, induced others to infringe, and/or contributed to the infringement of the

Patents-in-suit [sic; there is only one patent in suit]," since "at least July 6, 2017," the date of the initial complaint in this case. Dkt. No. 111, at ¶¶ 35, 39–41. Academy opposed IDB's motion to file the Third Amended Complaint, Dkt. No. 118, which provoked a reply from IDB, Dkt. No. 125, and a surreply from Academy, Dkt. No. 126.

Simultaneously with the filing of the motion to file its Third Amended Complaint, IDB filed a motion to withdraw its motion to file its Second Amended Complaint. Dkt. No. 113. Academy filed a response in opposition to that motion, Dkt. No. 117, and IDB filed a reply, Dkt. No. 124.

Finally, on November 30, 2018, IDB filed a motion to amend its infringement contentions. The amended version of IDB's infringement contentions included allegations of joint infringement by Academy and the users of its website. Dkt. No. 119. The motion and the attached infringement contentions contain allegations regarding direct infringement generally and direct joint infringement in particular. *See* Dkt. No. 119, at 2, 5–6, 8; Dkt. No. 120-1, at 3. However, neither the motion nor the attached infringement contentions asserted a theory of indirect infringement in general, or induced infringement in particular. Academy filed an opposition to IDB's motion to amend its infringement contentions, Dkt. No. 128, and at the same time filed a motion to strike the amended infringement contentions, Dkt. No. 129. Academy's motion to strike was substantively identical to its opposition to the motion to amend. *See id.* at 2 n.1.

The upshot of this procedural imbroglio is the following: (1) in light of the Court's claim construction, IDB wishes to raise a theory of joint infringement, which it has alleged in its Third Amended Complaint and in its proposed amended infringement contentions; (2) IDB also wishes to raise a theory of induced infringement, which it alleged in its Third Amended Complaint, but

has not included in its amended infringement contentions; and (3) IDB also wishes to raise willful infringement, which it alleged in its Second and Third Amended Complaints. Academy opposes IDB's position on each of those issues. Academy argues that IDB's efforts to raise those issues through its Second and Third Amended Complaints and its amended infringement contentions are untimely, and that IDB should be barred from relying on any of those theories of liability in this case.

## II. DISCUSSION

### A. Governing Legal Principles.

Under Rule 15(a)(1), Fed. R. Civ. P., a party may amend a pleading once as a matter of course more than 21 days after service of the original pleading or a responsive pleading or a motion under Rules 12(b), 12(e) or 12(f). After that, a party may amend a pleading only with the opposing party's consent or leave of court. Fed. R. Civ. P. 15(a)(2). Leave of court is to be freely granted "when justice so requires." *Id.*

Once a scheduling order has been entered in the case and a deadline has been set for filing amended pleadings, the decision whether to permit a post-deadline amendment is governed by Rule 16(b), Fed. R. Civ. P.[2] Under Rule 16(b)(4), a motion to modify the scheduling order by permitting the filing of an amended pleading after the deadline in the scheduling order may be granted "only for good cause and with the judge's consent."

The party seeking to modify the scheduling order has the burden to show good cause. *Squyres*, 782 F.3d at 237; *Self v. Quinn's Rental Servs. (USA), LLC*, Civil Action No. H-15-

---

[2] *See Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015); *EEOC v. Serv. Temps Inc.*, 679 F.3d 323, 333–34 (5th Cir. 2012); *S&W Enters., LLC v. Southtrust Bank of Ala., N.A.*, 315 F.3d 533, 535 (5th Cir. 2003); *L.G. Motorsports, Inc. v. NGMCO, Inc.*, No. 4:11-cv-112, 2013 WL 2543398, at *6 (E.D. Tex. June 6, 2013).

1569, 2016 WL 6835093, at *1 (S.D. Tex. Nov. 21, 2016). The Fifth Circuit has held that trial courts responsible for making the "good cause" determination under Rule 16 enjoy "broad discretion to preserve the integrity and purpose of the pretrial order." *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (quoting *Hodges v. United States*, 597 F.2d 1014, 1018 (5th Cir. 1979)).[3] The Fifth Circuit, moreover, has directed that in deciding whether to permit amendments to the pleadings after the deadline for such amendments, district courts should consider "(1) the explanation for the party's failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice." *United States ex rel. Bias v. Tangipahoa Parish Sch. Bd.*, 816 F.3d 315, 328 (5th Cir. 2016) (quoting *S&W Enters.*, 315 F.3d at 536 (alterations in original)); *Filgueira v. U.S. Bank Nat'l Ass'n*, 734 F.3d 420, 422 (5th Cir. 2013); *Ciena Corp. v. Nortel Networks Inc.*, 233 F.R.D. 493, 494 (E.D. Tex. 2006).

Similar considerations govern the question whether to permit an out-of-time amendment of infringement contentions. *See Glob. Sessions LP v. Travelocity.com LP,* No. 6:10-cv-671, 2012 WL 1903903, at *2 (E.D. Tex. May 25, 2012); *Motorola, Inc. v. Analog Devices, Inc.*, No. 1:03-cv-131, 2004 WL 5633735, at *1 (E.D. Tex. Apr. 8, 2004). The Local Patent Rules of the Eastern District of Texas provide for infringement contentions to be served at the outset of the case. E.D. Tex. Patent Rule 3-1. The rules generally allow the patent owner to amend its infringement contentions only by order of the court upon a showing of "good cause." E.D. Tex.

---

[3] Although this case is subject to the appellate jurisdiction of the Federal Circuit, the issue of whether to grant an untimely motion to amend the complaint is a procedural question not specific to patent law or bearing on substantive patent law issues. Therefore, regional circuit law—in this case Fifth Circuit law—applies to this issue. *See Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1309 (Fed. Cir. 2011); *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1354 (Fed. Cir. 2009); *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1480 (Fed. Cir. 1990).

Patent Rule 3-6(b); *see Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015). To determine whether the patent owner has shown good cause to amend its infringement contentions, courts in the Eastern District of Texas consider "(1) the explanation for the party's failure to meet the deadline, (2) the importance of what the court is excluding, (3) the potential prejudice if the court allows that thing that would be excluded, and (4) the availability of a continuance to cure such prejudice." *Id.*; *see also Motio, Inc. v. Avnet, Inc.*, No. 4:12-cv-647, 2015 WL 5952530, at *1–2 (E.D. Tex. Oct. 13, 2015); *Kroy IP Holdings, LLC v. AutoZone, Inc.*, No. 2:13-cv-888, 2014 WL 7463099, at *1 (E.D. Tex. Dec. 30, 2014); *Arbitron, Inc. v. Int'l Demographics Inc.*, No. 2:06-cv-434, 2009 WL 166555, at *1 (E.D. Tex. Jan. 16, 2009); *STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845, 850 (E.D. Tex. 2004).

There is an exception to the requirement in Local Patent Rule 3-6(b) that amending infringement contentions can only be done with leave of court and upon a showing of good cause. The exception, which is codified in Local Patent Rule 3-6(a)(1), applies if the patent holder "believes in good faith" that the court's claim construction ruling requires that the infringement contentions be amended. In that instance, the patent holder may serve amended infringement contentions within 30 days of service of the court's claim construction ruling without the need to obtain leave of court. Through case law, the judges of the Eastern District of Texas have held that the exception for amendments to infringement or invalidity contentions following a claim construction order applies only if the claim construction order results in an unexpected construction.[4] The courts have further held that ordinarily the court's claim

---

[4] *See Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-cv-588, 2018 WL 1695231, at *4 (E.D. Tex. Apr. 6, 2018) (citing numerous cases); *see also VirnetX Inc. v. Cisco Sys., Inc.*, No. 6:10-cv-417, 2012 WL 12546881, at *3 (E.D. Tex. Oct. 22, 2012); *Patent Harbor, LLC v. Audiovox Corp.*, No. 6:10-cv-361, 2012 WL 12840341, at *2 (E.D. Tex. Mar. 30, 2012); *Ameranth, Inc. v. Menusoft Sys. Corp.*, No. 2:07-cv-271, 2010 WL 11530914, at *1 (E.D. Tex.

construction will not be deemed unexpected, for purposes of Local Patent Rule 3-6(a)(1), simply because the construction differs from the party's proposed construction; the court's construction will also not be regarded as surprising if the construction is the same as or similar to a proposed construction offered by the opposing party.[5]

---

Aug. 23, 2010); *MASS Engineered Design, Inc. v. Ergotron, Inc.*, 250 F.R.D. 284, 286 (E.D. Tex. 2008).

[5] *See Cell & Network Selection LLC v. AT&T Inc.*, No. 6:13-cv-403, 2014 WL 10727108, at *2 (E.D. Tex. Nov. 10, 2014) (allowing amendment, while recognizing that "[t]raditionally, the Court's adoption of another party's construction alone is not sufficient to support a party's good faith belief it was surprised by the Court's ruling"); *VirnetX*, 2012 WL 12546881, *3 (same); *Patent Harbor*, 2012 WL 12840341, at *2 (denying amendment: "Defendants must show that the Court's construction was so different from the parties' proposed constructions that amending their ICs is necessary."); *Parallel Networks, LLC v. Abercrombie & Fitch*, No. 6:10-cv-111, 2011 WL 13098299, at *2 (E.D. Tex. Dec. 5, 2011) (denying amendment); *ACQIS LLC v. Appro Int'l, Inc.*, No. 6:09-cv-148, 2011 WL 13137344, at *2 (E.D. Tex. Jan. 20, 2011) (denying amendment: "IBM should have prepared for the possibility that the Court would not adopt its proposed limitation. A party cannot argue that merely because its proposed claim construction is not adopted by the Court, it is surprised and must prepare new invalidity contentions."); *Ameranth*, 2010 WL 11530914, at *1 (denying amendment: "The court fails to see how Ameranth could be caught off guard by the claim construction order [that adopted the defendants' claim construction]."); *Alcatel USA Res., Inc. v. Microsoft Corp.*, No. 6:06-cv-500, 2008 WL 11348444, at *4 (E.D. Tex. Oct. 3, 2008) ("A party cannot argue that merely because its proposed claim construction is not adopted by the Court, it is surprised"); *MASS Engineered Design*, 250 F.R.D. at 286 (denying amendment: When the court adopted the defendant's claim constructions without major modification, the plaintiff "was on notice of the possibility of the Court's constructions from at least the time" it proposed its own constructions); *Nike, Inc. v. Adidas Am. Inc.*, 479 F. Supp. 2d 664, 667 (E.D. Tex. 2007) (denying amendment: "Th[e] exception [in Local Patent Rule 3-6(a)] is intended to allow a party to respond to an unexpected claim construction by the court. This does not mean that after every claim construction order, new infringement contentions may be filed."); *Finisar Corp. v. DirecTV Grp., Inc.*, 424 F. Supp. 2d 896, 901 (E.D. Tex. 2006) (denying amendment: "DirecTV did not adequately explain how the court's definition of any of the terms in dispute was so surprising, or differed so greatly from the proposals made by the parties, that it justifies admission of new prior art references two weeks before Finisar's deadline to submit rebuttal expert reports.").

### B. The Legal Principles Applied to this Case

#### 1. Joint Infringement

As noted, IDB did not allege joint infringement in its original complaint, its First or Second Amended Complaints, or its original infringement contentions. It added the theory of joint infringement for the first time in its Third Amended Complaint and its amended infringement contentions, both of which were served on Academy following the entry of the Court's claim construction order on October 31, 2018. The Third Amended Complaint was served on November 17, 2018, and the amended infringement contentions were served on November 30, 2018. Because IDB has moved for leave to file its amended infringement contentions under Local Patent Rule 3-6(b), the same four-part test applies to the question whether IDB has shown good cause to amend its infringement contentions as to the question whether IDB has shown good cause to file its Third Amended Complaint. The parties disagree about whether both sets of new allegations should be allowed in light of that four-part test.

#### a. Diligence: the reason for the delay

It is undisputed that IDB's Third Amended Complaint was served out-of-time under the docket control order, which set a July 26, 2018, deadline for amending pleadings. Case No. 2:17-cv-660 (May 15, 2018, minute order). It is similarly undisputed that IDB's amended infringement contentions were served out-of-time, since infringement contentions were required to be served no later than 10 days before the initial case management conference. That conference was held on November 28, 2017, *see* Case No. 2:17-cv-523 (November 29, 2017, minute order), and the original amendment contentions were served on November 14, 2017.

IDB argues that the explanation for its failure to comply with the provisions of the docket control order governing the filing of pleading amendments and infringement contentions is that it

had a good faith belief that its proposed claim constructions were correct and that it based its initial allegations of infringement on that good faith belief. Moreover, contrary to Academy's assertion, IDB argues that it has never disclaimed the theory of joint infringement. Instead, IDB contends that prior to the Court's claim construction order, IDB considered it unnecessary to proceed under a joint infringement theory. Following the Court's claim construction order, however, IDB argues that it found it necessary to add additional allegations regarding the role of users in the infringing conduct and to pursue a joint infringement theory of infringement. Dkt. No. 119, at 5.

The Court agrees that IDB never disclaimed the theory of joint infringement. Instead, prior to the Court's claim construction, IDB merely took the position that it did not intend to rely on a joint infringement theory, because IDB construed the claims as being directed only to steps performed by a computer under Academy's control. *See* Dkt. No. 44, at 16; Dkt. No. 96, at 11. The Court also agrees with IDB's contention that, following the Court's claim construction order, IDB recognized that it would likely be necessary to proceed on a theory of joint infringement in order to present a submissible infringement case with regard to the bulk of the charged acts of infringement.[6]

The parties focus much of their attention on whether the Court's claim constructions, which incorporated a role for the user in claims 1 and 2 and in two of the means-plus-function limitations of claim 19, provided a justification for IDB's inclusion of a theory of joint infringement in its Third Amended Complaint and its amended infringement contentions.

---

[6] IDB has alleged that Academy's acts of infringement include infringement by internal Academy testers of the accused system. As to such acts of infringement, IDB contends that it is not necessary to proceed on a joint infringement theory. It appears to be undisputed, however, that the acts of tester infringement constitute only a small part of the overall infringement charged by IDB.

Following the Court's claim construction order, IDB served its Third Amended Complaint and its amended infringement contentions reasonably promptly (within 17 days in the case of the Third Amended Complaint and within 30 days in the case of the amended infringement contentions). The question, therefore, is whether it was reasonable for IDB not to have pleaded the theory of joint infringement in its complaint and infringement contentions prior to the Court's issuance of its claim construction order.

IDB's original theory of the case was predicated on the notion that it could prove direct infringement through the conduct of Academy alone, in the operation of its website, and that it was not necessary to demonstrate actions by users of the website. Based on that theory, IDB argued that the claims should be construed not to require proof that particular steps or functions were performed by users of the accused system. Although the Court rejected IDB's claim construction arguments on that score, IDB's theory of direct infringement was not frivolous or fanciful. And because the Court's claim construction order effectively rejected IDB's theory of direct infringement, it was reasonable for IDB to fall back on a theory of joint infringement, which it did with reasonable promptness. The Court concludes that, under circumstances of this case, IDB's failure to plead joint infringement in its original complaint and in its First Amended Complaint was not unreasonable.

The more difficult question is whether IDB should be permitted to amend its infringement contentions following the Court's claim construction order. While it might be thought that the patent owner's right to amend infringement contentions should be congruent with the right to amend its complaint, the courts of this district have frequently denied parties' efforts to amend infringement and invalidity contentions following claim construction orders, as illustrated by the cases cited in footnote 5, *supra*.

A theme running through the cases dealing with this issue is that the infringement contention provisions of the Local Patent Rules are designed to ensure that parties formulate their infringement and invalidity theories early in the case and not make "eleventh-hour alterations" in their positions, subjecting their opposing party to additional delay, expense, and potential prejudice. *See Iovate Health Scis., Inc. v. Bio-Engineered Supplements & Nutrition, Inc.*, No. 9:07-cv-46, 2008 WL 11344914, at *2 (E.D. Tex. Aug. 7, 2008); *Computer Acceleration Corp. v. Microsoft Corp.*, 481 F. Supp. 2d 620, 624 (E.D. Tex. 2007); *Finisar Corp. v. DirecTV Grp., Inc.*, 424 F. Supp. 2d 896, 900–01 (E.D. Tex. 2006).

Most of the cases in which the courts have refused to permit amendments to infringement contentions following claim construction, unless the court's claim construction was surprising or unexpected, were decided under Local Patent Rule 3-6(a)(1). Those cases have held that the "good faith" requirement of Rule 3-6(a)(1) is not satisfied if the claim construction was foreseeable. IDB suggests that those cases are not applicable under the diligence prong, because those cases were decided under the "good faith" standard of Rule 3-6(a)(1), while IDB is proceeding in this case under the "good cause" standard of Local Patent Rule 3-6(b). *See* Dkt. No. 133, at 2.

The Court is not persuaded that the "good cause" standard of Rule 3-6(b) should be interpreted more leniently than the "good faith" standard of Rule 3-6(a)(1). Rule 3-6(a)(1) is intended to be an exception to the requirement under Rule 3-6(b) to obtain court approval to serve amended infringement contentions; the exception applies to amended infringement contentions that are filed within 30 days of a claim construction order in the good faith belief that unexpected claim constructions require the amendment of the original infringement contentions. If the "good cause" requirement of Rule 3-6(b) were applied more leniently than the "good faith"

requirement of Rule 3-6(a), there would seldom be any reason to invoke the exception of Rule 3-6(a) instead of the more general rule set forth in Rule 3-6(b).  *See Finisar*, 424 F. Supp. at 901 (applying the same standard to the "good cause" determination under Rule 3-6(b) as is applicable to the "good faith" determination under Rule 3-6(a), and not allowing amendment of invalidity contentions where defendant "did not adequately explain how the court's definition of any of the terms in dispute was so surprising, or differed so greatly from the proposals made by the parties, that it justifies admission of new prior art references").

To be sure, in cases in which the patent owner has sought to amend its infringement contentions following an adverse claim construction ruling, courts in this district have sometimes allowed parties to amend their infringement contentions.  *See, e.g., Cell & Network Selection LLC*, 2014 WL 10727108, at *3 (allowing amendment of infringement contentions "under the circumstances of this case" in light of claim construction ruling adverse to the plaintiff).  But the courts have been skeptical of claims of a need to amend when the court's claim construction has not substantially altered the complexion of the case.  *Azure Networks, LLC v. CSR PLC*, No. 6:11-cv-139, 2012 WL 12919538, at *2 (E.D. Tex. Dec. 4, 2012); *VirnetX,* 2012 WL 12546881, at *3; *Ameranth,* 2010 WL 11530914, at *1; *Iovate Heath Scis.*, 2008 WL 11344914, at *2.  In addition, motions to amend infringement contentions have been denied when the courts have adopted the claim construction proposed by the accused infringer; in that setting, the courts have noted that the patent owner was aware of the possibility that the claim construction could undermine the patent owner's infringement contentions and should have taken precautions by framing its infringement contentions to avoid that risk.  *See MASS Engineered Design*, 250 F.R.D. at 286; *Nike*, 479 F. Supp. 2d at 667; *Finisar*, 424 F. Supp. 2d at 901.

On the other hand, where the court's claim construction differs significantly from either party's proposed construction, the courts have allowed amendments of infringement or invalidity contentions. *See SSL Servs., LLC v. Citrix Sys., Inc.*, No. 2:08-cv-158, 2012 WL 12904284, at *2 (E.D. Tex. Mar. 16, 2012). And even the strong policy against allowing a "shifting sands" approach to infringement contentions, *see Motorola, Inc.*, 2004 WL 5633735, at *1, has not always been held sufficient to override the patent owner's interest in revising the infringement contentions to assert a theory of infringement compatible with the court's claim construction. As one court in this district stated, "[a]lthough the Court is concerned about encouraging late-hour amendments of infringement contentions," the patent owner "was not required to incorporate Defendants' contrasting proposed constructions in its infringement contentions prior to those constructions being adopted by the Court." *Cell & Network Selection*, 2014 WL 10727108, at *3.

In this case, the Court adopted constructions with regard to each of the limitations bearing on the joint infringement issue that were somewhat different from Academy's proposed constructions. The differences, however, were relatively minor and not sufficient, standing alone, to constitute a surprising or unexpected departure from the constructions proposed by Academy.

Moreover, as was true in a number of the cases cited above, IDB was on notice of the potential problems with its direct infringement theory from an early stage in the case. The issue of user involvement in the asserted claims was apparent as early as October 10, 2017, when Academy filed its motion to dismiss the original complaint, and that issue was teed up as a claim construction issue from the beginning of the claim construction briefing. IDB could have guarded against the need to seek leave to file out-of-time amended infringement contentions by

including a joint infringement theory at an earlier stage of the case. Given the general strictness of courts in this district about amending infringement contentions after adverse claim construction rulings, IDB would have been prudent to include a joint infringement allegation at that early stage. Because IDB did not take that prophylactic step when it could have done so without significant risk, the Court concludes that the diligence factor weighs against IDB with respect to the joint infringement issue.[7] Other factors, however, weigh in IDB's favor, as discussed below.

### b. The importance of the amendments

A factor cutting in favor of permitting the amendments is the importance of the joint infringement theory to IDB's case. Under the Court's claim construction, the joint infringement theory might well be essential to IDB's ability to prove infringement. The role of the user, as outlined in the Court's claim constructions, makes it likely that IDB will have to rely on the conduct of users for some of the steps necessary to prove infringement of asserted method claims 1 and 2, and to satisfy two of the means-plus-function limitations of asserted claim 19.

Academy argues that IDB's amendments would be futile because IDB will not be able to satisfy the element of "direction or control" that is necessary to prove joint infringement. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015). In the context of this case, that question is more suitable for determination either in summary judgment proceedings or at trial.

---

[7] Academy relies heavily on this Court's opinion in *Sycamore IP Holdings*, which held that the plaintiff had not satisfied the "good faith" requirement of Local Patent Rule 3-6(a)(1) when it failed to make a timely motion to amend its infringement contentions to include a doctrine of equivalents theory. In that case, the plaintiff was aware for nearly a year that it needed to move to amend its infringement contentions, but did not do so until shortly before trial. *See Sycamore*, 2018 WL 1695231, at *9. The plaintiff's lack of diligence was more pronounced in that case than in this one.

The Court should not deprive IDB of the opportunity to test the viability of its theory of joint infringement at the summary judgment stage when it is not clear to the Court that IDB would be unable to prevail on its theory. While a court may properly consider the likely futility of a claim in determining whether to permit an amendment of a complaint, futility is generally measured by whether a party's amended complaint "fail[s] to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000) (construing futility in the context of Fed. R. Civ. P. 15(a)); *Mason v. Fremont Inv. & Loan*, 671 F. App'x 880, 883 (5th Cir. 2016) (same rule as applied to a motion for leave to amend under Fed. R. Civ. P. 16); *see also Performance Pulsation Control, Inc. v. Sigma Drilling Techs., LLC*, No. 4:17-cv-450, 2018 WL 2316973, at *2 (E.D. Tex. May 22, 2018); *Glob. Sessions*, 2012 WL 1903903, at *1-2 ("Infringement contentions are not intended to require a party to set forth a *prima facie* case of infringement and evidence in support thereof."); *Realtime Data, LLC v. Packeteer, Inc.*, No. 6:08-cv-144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009) ("While infringement contentions must be reasonably precise and detailed . . . to provide a defendant with adequate notice of the plaintiff's theories of infringement, they need not meet the level of detail required, for example, on a motion for summary judgment on the issue of infringement, because infringement contentions 'are not meant to provide a forum for litigation on the substantive issues.'") (quoting *Linex Tech., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 713 (E.D. Tex. 2008)); *Computer Acceleration Corp.*, 481 F. Supp. 2d at 626. Thus, while a court, in assessing the importance of an amendment, must make a "pragmatic judgment on the likelihood that the newly asserted [claim] will succeed," *Allergan, Inc. v. Teva Pharm. USA, Inc.*, No. 2:15-cv-1455, 2017 WL 1512334, at *5 (E.D. Tex. Apr. 27, 2017), the court does not need to satisfy itself that the patent owner has made out a prima facie case of infringement under the new claim.

It is enough that the amended claim would survive a motion to dismiss. *See Filgueira*, 734 F.3d at 423 ("Filgueira fails to show the importance of his amendment" because "it would not have changed the outcome of the court's ruling" on the motion to dismiss.); *Stripling*, 234 F.3d at 873 (the legal standard set forth in Fed. R. Civ. P. 12(b)(6) governs the inquiry into futility).

In this case, the Court is satisfied that the Third Amended Complaint states a claim of joint infringement. IDB has set forth each of the elements of joint infringement in some detail in paragraphs 14 through 22 of the Third Amended Complaint. The facts ultimately may not support IDB's allegations or establish the direction and control of the users of Academy's accused system that is necessary to establish liability for joint infringement, but that is a matter to be decided on summary judgment or at trial, not in the present context of a motion to file an amended complaint out of time.[8]

### c. The danger of unfair prejudice to Academy

A particularly important consideration in this case is that Academy acknowledged, in the October 17, 2018, claim construction and motions hearing that "[i]f joint infringement is required [] we have no problem with them repleading joint infringement." Dkt. No. 107, at 32. That constitutes a plain statement that Academy has no objection to IDB's attempting to proceed on a joint infringement theory. To be sure, Academy was quick to point out that in its view IDB would not succeed in proving joint infringement. Regardless of Academy's skepticism about the

---

[8] IDB argues that even if the Court were to accept Academy's arguments regarding joint infringement, its allegations as to infringement by internal testers would still survive. Academy responds that such a theory of liability "cannot be made in good faith" because any damages from infringement by testers "would be nominal at best." Dkt. No. 118, at 10 n.13. Questions as to the extent of Academy's internal testing and the damages that might flow from any infringement based on internal testing are premature for resolution in the context of the present motions. At minimum, it is not clear to the Court that there is no merit to IDB's claim regarding infringement by testing. It particular, it is not clear to the Court that, as Academy alleges, IDB's "infringement by tester" theory amounts "to nothing more than an exceptionally blatant attempt to extract a nuisance value settlement from Academy." *Id.*

strength of IDB's joint infringement theory, however, Academy's agreement that IDB may be permitted to plead joint infringement indicates, at a minimum, that Academy would not be significantly prejudiced by allowing IDB to proceed on that ground. Academy's agreement is thus a material factor in favor of allowing the proposed amendments.[9]

### d. The availability of a continuance

Finally, the Court does not anticipate the need for a continuance in this case following the amendments adding the theory of joint infringement. The possible need to address joint infringement has been present in the case since Academy's proposed claim constructions. Presumably, Academy has given consideration to the implication of allowing that theory to proceed, at least since IDB moved to amend its complaint in October 2018. Therefore, Academy's expert could be expected to have given consideration as to how that theory would impact the expert's infringement analysis. Moreover, it seems unlikely that Academy will need any additional fact discovery to prepare to meet IDB's allegations of joint infringement, as the evidence regarding any acts that might give rise to a claim of joint infringement would be in Academy's possession, not IDB's. Finally, if Academy makes a showing of a need to permit an

---

[9] In its surreply brief, Academy argues that because IDB "has failed to make an affirmative showing of good cause [i.e., diligence] to amend its infringement contentions, prejudice has no bearing on IDB's Motion." Dkt. No. 136, at 2. In support of that proposition, Academy quotes a remark made by Judge Gilstrap during a motions hearing in 2012 in a different case. The order on the motion entered by Judge Gilstrap following that hearing, however, undermines Academy's reliance on that in-court remark. In the order, which Academy did not cite to the Court, Judge Gilstrap first took note of the four-factor test that applies to motions to file amended infringement contentions out of time. He then ruled that the first factor—the explanation for the delay—weighed against the plaintiff. However, because the other three factors, including prejudice, weighed in favor of the plaintiff, Judge Gilstrap granted the motion to amend. *Lake Cherokee Hard Drive Techs., LLC v. Bass Computers, Inc.*, No. 2:10-cv-216, 2012 WL 2565273, at *2–3 (E.D. Tex. July 2, 2012).

adjustment in its expert's report to take account of the theory of joint infringement, that need can be accommodated within the time remaining before trial.[10]

Balancing all of the applicable factors, the Court concludes that IDB should be permitted to amend its complaint and infringement contentions to incorporate its joint infringement theory. Permitting IDB to raise the joint infringement theory encompasses allowing IDB to allege, both in its Third Amended Complaint and in its amended infringement contentions, that users of Academy's accused system participate as joint infringers in the infringement of claims 1 and 2 of the '139 patent. In addition, IDB's new allegations regarding the role of users in the allegedly infringing conduct apply to IDB's contentions regarding the two means-plus-function limitations of claim 19 that the Court construed to include conduct by a user.

### 2. Induced Infringement

In its Third Amended Complaint, IDB added two paragraphs alleging that Academy is liable on a theory of induced infringement under 35 U.S.C. § 271(b). IDB alleged that Academy has induced infringement by others, "including at least users, each of Defendant's users and third party users, of the Accused Instrumentality" by steps including "encouraging, advertising . . . , promoting, and instructing others to use and/or how to use at least the Accused Instrumentality." Dkt. No. 111, at 10–11. With regard to the requirement that an inducer have knowledge of the patent-in-suit, the Third Amended Complaint alleges that Academy has been aware of the '139 patent since at least July 6, 2017, the day the infringement suit was filed against Academy. *Id.* at 11.

The problem with IDB's claims of induced infringement is that the theory of induced infringement is not set forth in IDB's original or amended infringement contentions. Although

---

[10]    Because IDB is responsible for the delay, the Court will not be favorably inclined toward any request by IDB for additional time for discovery in the event such a request is made.

IDB's amended infringement contentions assert the theory of direct joint infringement, they do not include any reference to indirect induced infringement or any of the facts that would be necessary to support a claim of indirect induced infringement. Therefore, even if the Court were to permit the amendment of the complaint to include an induced infringement theory, the absence of any reference to induced infringement in the infringement contentions would bar IDB from proceeding on that theory.

In addition, with respect to the importance of the induced infringement theory, the Court notes that the complaint identifies July 6, 2017, as the date on which Academy became aware of the '139 patent. No earlier date is provided, nor is there any basis set forth in the Third Amended Complaint from which to infer Academy's knowledge of the '139 patent.[11] Yet the '139 patent expired on August 31, 2017. Therefore, even if the Court were to permit IDB to proceed with its induced infringement theory, the case against Academy would likely be limited to alleged acts of infringement taking place during the 56-day period between July 6 and August 31, 2017, even if IDB could prove the other elements of induced infringement. For that reason, the Court concludes that the induced infringement theory, unlike the theory of joint infringement, is not of primary importance to the viability of IDB's case. There is therefore no justification for permitting IDB to amend its complaint to include the allegations of induced infringement.

### 3. Willful infringement

IDB did not plead willfulness in its original complaint or in its First Amended Complaint. The allegations of willfulness made their appearance only in the Second and Third Amended Complaints. The Court concludes that IDB has not pointed to any circumstances arising between

---

[11] IDB suggests that the evidence that Academy had a license to an e-commerce platform owned by a third party constitutes evidence that Academy was aware of the '139 patent before the July 6, 2017, filing date of the original complaint in this case. For the reasons given in section II(B)(3), below, that argument is unconvincing.

the deadline for amending pleadings on July 26, 2018, and the date the Second and Third Amended Complaints were filed and served, in late October and mid-November 2018, that would justify allowing IDB to amend its pleadings to add a claim of willfulness. The Court therefore will deny IDB's motion to amend the pleadings to the extent IDB seeks leave to add a claim of willful infringement.

In an effort to demonstrate that facts arose between July and October of 2018 that would justify IDB's addition of a claim of willfulness, IDB points to an issue regarding a license allegedly held by Academy. The license was to what Academy refers to as an e-commerce platform sold by a third party that received a license to the '139 patent from IDB's predecessor-in-interest. According to IDB, Academy made representations that it had a license from the third party to use the e-commerce platform, and that the license provided protection for Academy against IDB's infringement action. In mid-September of 2018, according to IDB, Academy produced materials from which IDB learned that the purported license did not cover the damages period at issue in this case. That discovery, according to IDB, justified IDB's amendment of its complaint to include a charge of willful infringement.

The Court sees no merit in IDB's argument. Nothing about the purported license from the third party or the September 2018 disclosure of facts about the license bears on whether Academy's infringement may be willful. If Academy had a valid license that covered some or all of the infringement period, that fact would affect its liability for infringement, but not the willfulness of its conduct. To the extent that IDB means to suggest that the facts regarding the license indicate that Academy had knowledge of the '139 patent prior to the July 6, 2017, filing date of the original complaint, the argument is unconvincing. There is no support for the proposition that Academy's license provided Academy with knowledge of the existence or

content of the patent; the license was simply to a platform, not to a patent. Dkt. No. 125-3. And in any event, the filing of the original complaint in July 2017 plainly gave Academy notice of the existence of the '139 patent. Therefore, if notice of the existence of the patent—and continuing infringement after that date—was sufficient to give rise to a valid charge of willful infringement, IDB could have alleged willful infringement in the original complaint or in the First Amended Complaint, which was filed on April 4, 2018, long before the July 26, 2018, deadline for amending pleadings.

Even as of the date that new counsel entered their appearance for IDB in May 2018, Dkt. Nos. 41, 42, there was ample time within which counsel could have filed a timely amendment to IDB's complaint to add an allegation of willfulness. Under all these circumstances, it seems clear that IDB's decision to plead willful infringement was simply an afterthought, not a step predicated on any unexpected event in the case. The circumstances as outlined by the parties provide no support for IDB's contention that its discovery of the facts underlying the licensing episode justifies adding a claim of willfulness to the complaint more than three months after the deadline for filing amended pleadings. To the contrary, to the extent that IDB has a willfulness claim against Academy, it should have known that it had such a case well before the deadline for amending the pleadings. *See E.I. DuPont de Nemours & Co. v. Unifrax I LLC*, No. 14-1250, 2017 WL 1822279, at *2 (D. Del. May 5, 2017). The portion of IDB's motion for leave to amend its complaint that is addressed to willful infringement will therefore be denied.

### 4. Other aspects of IDB's Amended Infringement Contentions

In addition to allegations regarding the role of the users in the joint infringement claims, IDB's amended infringement contentions include new allegations regarding the query dialog box limitation and new allegations regarding the structure of the means-plus-function limitations in

asserted claim 19. Academy seeks to strike those portions of the amended infringement contentions. IDB replies that those amended contentions were responsive to the Court's claim constructions regarding the query dialog box and three of the means-plus-function limitations in claim 19.

In particular, IDB argues that the amended infringement contentions simply explain how IDB intends to prove infringement under the Court's claim constructions. According to IDB, the differences between the Court's constructions of the query dialog box and the three contested means-plus-function limitations required—and justified—IDB's amendment of those portions of its infringement contentions in response to the Court's claim constructions.

The Court agrees with IDB that it should be allowed to amend its infringement contentions in light of the Court's claim constructions. The new infringement contentions regarding the role of users in the acts of infringement charged in claim 19 parallel the new contentions regarding the role of users in the acts of joint infringement charged in claims 1 and 2. The justification for allowing those contentions to be added in the amended infringement contentions therefore applies equally to the allegations regarding claim 19 as to the allegations regarding claims 1 and 2.

As for the allegations regarding the query dialog box, the amended contentions simply flesh out the allegations in the original infringement contentions in light of the Court's claim construction of the term query dialog box. The claim chart in the amended contentions adds a reference to the query dialog box as "a defined area displayed on a monitor that allows for user input related to the text data objects and is distinct from the defined area for displaying the text data objects." Dkt. No. 120-1, at 8, 26. That definitional language adds no new claim, product, or theory of liability to IDB's case. Instead, it simply tracks the Court's claim construction and

thus defines the query dialog box in a manner that IDB will be required to prove in order to show infringement, regardless of whether that definitional language is included in the amended infringement contentions.

The same is true of the new portions of the infringement contentions relating to the means-plus-function limitations of claim 19. *See* Dkt. No. 120-1, at 30, 31–32. The added material simply sets forth the manner in which IDB proposes to demonstrate that the structures set forth in the specification perform the functions set forth in the claims. Once again, there is no new claim, product, or theory of infringement added in that new material.

The act of providing additional detail to a theory already set forth in the original infringement contentions does not justify striking a party's amended infringement contentions. *See VirnetX Inc.*, 2012 WL 12546881, at *3 (additional information "does not assert a new theory but merely fleshes out its prior contentions"); *Glob. Sessions*, 2012 WL 1903903, at *6 (stating that it is permissible to amend infringement contentions to add specificity and detail concerning acts of alleged infringement). The added details regarding the query dialog box that track the Court's claim construction simply set out what the Court's constructions have required IDB to prove, which comes as no surprise to Academy. Those portions of the amended infringement contentions will therefore not be struck.

### 5. Remaining Motions

In light of the disposition of the motion to file the Third Amended Complaint, Dkt. No. 110, and the motion to file the amended infringement contentions, Dkt. No. 119, both of which are GRANTED IN PART and DENIED IN PART, the appropriate disposition of the remaining motions is clear. The motion to file the Second Amended Complaint, Dkt. No. 92, is DENIED AS MOOT; IDB's motion to withdraw its motion to file the Second Amended Complaint, Dkt.

No. 113, is GRANTED; and Academy's motion to strike IDB's amended infringement contentions, Dkt. No. 129, which is really just a reprise of Academy's opposition to IDB's motion to file amended infringement contentions, is GRANTED IN PART and DENIED IN PART on the same grounds that apply to IDB's corresponding motion to file amended infringement contentions.

IT IS SO ORDERED.

SIGNED this 28th day of December, 2018.


WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE